UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

JOHN WILHELM,

        Plaintiff,

v.

PFIZER, INC. *et al.*,

        Defendants.

Case No. 2:06-cv-00529-RFB-GWF

**<u>ORDER</u>**

## I.   INTRODUCTION

Before the Court are Defendants' and Plaintiff's Motions for Summary Judgment. ECF No. 46, 100. For the reasons stated below, the Court grants Defendants' Motion and denies Plaintiff's Motion.

## II.   BACKGROUND

This case was originally filed in 2006 by fourteen Plaintiffs, including Plaintiff John Wilhelm. ECF No. 1. The Complaint alleges that Plaintiffs suffered personal injuries as a result of taking Neurontin, a prescription drug developed, manufactured, sold, and distributed by Defendants Pfizer, Inc. and Warner-Lambert Company, LLC. ECF No. 2. The Complaint lists causes of action for fraud, negligence, negligence per se, breach of express warranty, and strict product liability. Id.

After its filing, this case was transferred to the Neurontin Multidistrict Litigation panel in the District of Massachusetts for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. Order, ECF No. 7. The MDL panel remanded the case to this Court on July 29,

1  2013, and on August 16, 2013, this Court permitted the withdrawal of counsel for the three
2  remaining plaintiffs in the case. ECF No. 16, 20. As of September 2016, John Wilhelm is the
3  only remaining plaintiff in this case, and he is proceeding *pro se*.

4  The Court entered a scheduling order on September 25, 2013. ECF No. 32. The last
5  extension regarding this order was given on June 20, 2014. ECF No. 77. At the request of
6  Wilhelm, this order extended Plaintiff's response deadline to Defendant's Motion for Summary
7  Judgment to July 17, 2014. Id. Since that time, Plaintiff has not requested any additional
8  extensions regarding discovery, or filing deadlines.

9  Defendants filed a Motion for Summary Judgment on February 28, 2014, arguing that
10 Wilhelm cannot produce any expert evidence to prove that Neurontin was the cause of his
11 injuries. ECF No. 46. The Court held a hearing regarding this Motion on January 26, 2016,
12 indicating it would issue a written order regarding this Motion. ECF No. 87.  The Court
13 permitted supplemental briefing on the issue of judicial estoppel regarding Wilhelm's previous
14 bankruptcy case filings in February 2016. Plaintiff filed a Motion for Summary Judgment on
15 May 31, 2016. ECF No. 100. The Court held another hearing on September 6, 2016 regarding
16 both motions.

17

18 **III.    LEGAL STANDARD**

19    **A. Motion for Summary Judgment**

20 Summary judgment is appropriate when the pleadings, depositions, answers to
21 interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no
22 genuine dispute as to any material fact and the movant is entitled to judgment as a matter of
23 law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When
24 considering the propriety of summary judgment, the court views all facts and draws all
25 inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747
26 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must
27 do more than simply show that there is some metaphysical doubt as to the material facts . . . .
28 Where the record taken as a whole could not lead a rational trier of fact to find for the

nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

### B. Fed. R. Civ. P. 26 and 37

Fed. R. Civ. P. 26(a)(1) governs initial disclosures in discovery and requires that a party must provide, among other things, "(i) the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment" and "(ii) a copy--or a description by category and location--of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." The rule further provides that parties must supplement disclosures and responses. See Fed. R. Civ. P. 26(e) (providing that a party "must supplement or correct its disclosure or response: in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.").

"Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001); See Fed. R. Civ. P. 37(c)(1) (providing that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial.").

### IV. UNDISPUTED FACTS

After reviewing the evidence submitted by the parties, the Court finds the following undisputed facts.

Neurontin is a prescription medication used to treat epileptic seizures. Wilhelm was prescribed Neurontin to treat chronic pain resulting from nerve damage. Wilhelm was prescribed

Neurontin from 1999 to 2005. During that period, he saw multiple physicians and healthcare providers, and he was prescribed other drugs during some or all of that period. Wilhelm's dosage of Neurontin varied between 1200 mg and 2400 mg per day.

On July 29, 2002, Wilhelm was admitted to the hospital in Butte, Montana and was found to have intentionally overdosed on a separate medication. He was taken to the intensive care unit and diagnosed as having attempted suicide.

On June 10, 2014, Plaintiff and his wife filed for Chapter 7 bankruptcy in Utah. Throughout this bankruptcy proceeding and the filings contained therein, Plaintiff never disclosed this lawsuit as required in various schedules and for various meetings or proceedings in the bankruptcy case. At the time of the bankruptcy case, Plaintiff was actively litigating this case. On September 20, 2014, Plaintiff and his wife received a discharge of his debts.

On January 26, 2016, the Court held a hearing regarding Defendant's Motion for Summary Judgment. ECF No. 87. After this hearing, Plaintiff submitted a Motion for Summary Judgment. ECF No. 100. In his Motion, Plaintiff attached medical records from Dr. Germin regarding Wilhelm's brain tumors dated September 12, 2002 and October 2, 2002; a medical record from Dr. Schaner regarding a spinal procedure dated September 19, 2002; and a medical record by Dr. Corry dated January 29, 2016. ECF No. 100. These medical records had not been previously disclosed to Defendant during or after the course of discovery, nor were they attached to Plaintiff's Opposition to Defendant's Motion for Summary Judgment. Plaintiff does not dispute that he could have submitted Dr. Germin and Dr. Schaner's records during discovery, and that he failed to do so. Plaintiff does not dispute that he obtained the medical record from Dr. Corry, attached to his Motion, after the Court held its hearing regarding Defendant's Motion in January 2016.

**V.     DISCUSSION**

After reviewing the parties' briefs and exhibits, the Court finds that Defendants' Motion for Summary Judgment must be granted because Wilhelm has not produced any evidence that Neurontin was the specific cause of his injuries.

- 4 -

### A. Montana Law Applies to This Case

"A federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits." Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court, 134 S.Ct. 568, 582 (2013). To determine which state's law to apply in tort claims, Nevada applies the Second Restatement's "most significant relationship" test. Gen. Motors Corp. v. Eighth Judicial Dist. Court, 134 P.3d 111, 116 (Nev. 2006). However, the most significant relationship test is a general rule, and if a more specific provision of the Second Restatement applies for a particular tort, courts should apply that provision. Id. at 117. Section 146 of the Second Restatement "provides a particularized framework for analyzing choice-of-law issues in personal injury cases." Id. Under Section 146, the rights and liabilities of the parties are determined by the law of the state where the injury occurred, unless "some other state has a more significant relationship" under the general principles of Section 6 of the Restatement. Rest. (Second) § 146, Conflict of Laws.

Here, the undisputed evidence shows that Wilhelm's attempted suicide occurred in Montana. Wilhelm's pharmacy records also show that he received the prescribed Neurontin in Montana. The Court also finds that no other state has a more significant relationship to the occurrence and parties. Therefore, the Court will apply Montana law to Wilhelm's claims.

### B. Defendant's Motion is Granted

Wilhelm asserts five causes of action in his Complaint: fraud, negligence, negligence per se, breach of express warranty, and strict products liability. ECF No. 2.

#### *1. Legal Standard*

Under Montana law, an essential element of each of Wilhelm's five causes of action is that the defendant's action or inaction must have caused the plaintiff's injury. See, e.g., Morrow v. Bank of Am., N.A., 324 P.3d 1167, 1182 (Mont. 2014) (a party asserting actual fraud must establish "the hearer's consequent and proximate injury or damages caused by their reliance on the representation."); Fisher v. Swift Transp. Co, Inc., 181 P.3d 601, 606 (Mont. 2008) ("To maintain an action in negligence, the plaintiff must prove four essential elements: duty, breach, causation, and damages."); Stipe v. First Interstate Bank, 188 P.3d 1063, 1066 (Mont. 2008);

- 5 -

1   Payne v. Berry's Auto, Inc., 301 P.3d 804, 810 (Mont. 2013) ("In an action based on breach of
2   warranty, it is of course necessary to show . . . that the breach of the warranty was the proximate
3   cause of the loss sustained.") (quoting U.C.C. § 2-314, cmt. 13);  Schelske v. Creative Nail
4   Design, Inc., 933 P.2d 799, 803 (Mont. 1997) ("[I]n a products liability action the plaintiff must
5   show: (1) the plaintiff was injured by the product; (2) the injury occurred *because* the product
6   was defective and unreasonably dangerous; and (3) the defect existed when it left the hands of
7   the defendant.") (emphasis added).

8   Further, expert testimony is required under Montana law "when the issue presented is
9   sufficiently beyond the common experience of the trier of fact and the expert testimony will
10  assist the trier of fact in determining the issue or understanding the evidence." McClue v. Safeco
11  Ins. Co., 354 P.3d 604, 610 (Mont. 2015) (citation and internal quotation marks omitted). See,
12  e.g., Hinkle v. Shepherd Sch. Dist. No. 37, 93 P.3d 1239, 1246 (Mont. 2004) (finding that
13  plaintiff's "ability to establish causation hinges on the testimony of their expert witness" because
14  "the development of ketoacidosis, Type I diabetes, and PTSD is beyond the common experience
15  and understanding of the trier of fact."). When expert testimony is required to establish a
16  necessary element of a claim, the expert must testify with a "reasonable medical certainty." Id.

17  With regards to the admissibility of expert testimony, in Montana, "[a] medical expert's
18  opinion is admissible if it is based on an opinion that it is 'more likely than not' that the alleged
19  wrongdoing caused the plaintiff's injury." Hinkle v. Shepherd Sch. Dist. No. 37, 93 P.3d 1239,
20  1246 (Mont. 2015).

21  *2. Application*

22  Wilhelm claims that Neurontin caused him to have suicidal thoughts and to attempt
23  suicide. He further claims that he was never informed of this risk.  The parties do not dispute that
24  whether or not a drug causes an individual to have suicidal thoughts or to attempt suicide is a
25  complex factual question.  This is particularly true in this case where Wilhelm was taking
26  multiple medications over a long period of time and appears to have a family history that
27  involves some individuals suffering from mental health issues.  Therefore, under these
28  circumstances, the Court finds that expert testimony is required to establish causation as to all of

Wilhelm's claims. See, e.g., Hulse v. State, Dept. of Justice, 961 P.2d 75, ¶ 48 (Mont. 1998) (expert testimony necessary to establish the relationship between alcohol consumption and nystagmus); compare Durbin v. Ross, 916 P.2d 758, 763 (Mont. 1996) (expert testimony not necessary to establish a fraud claim where the Realtors were held to the same standard of care as an ordinary citizen).

The Court finds that Wilhelm has failed to timely provide sufficient expert testimony on the issue of causation. At best, Wilhelm has attached a medical report by Dr. Corry to his Motion for Summary Judgment, filed on May 31, 2016, years after discovery closed and the dispositive motion deadline had passed.[1] ECF No. 100 at 9. Specifically, Dr. Corry states, in a letter written in January, that Neurotin was the cause of Plaintiff's suicidal ideation, depression, and suicide. Id. However, prior to May 31, 2016, Plaintiff failed to disclose Dr. Corry as an expert, and also failed to produce the report to Defendant. In fact, it appears on the face of Dr. Corry's letter, nor does Plaintiff dispute, that Plaintiff obtained the report only after the Court's hearing in January 2016. Last, Dr. Corry is not exempt from Fed. R. Civ. 26(a)(2)(B)'s requirements, as he was, by admission, not Plaintiff's treating physician at the time of Plaintiff's attempted suicide. See Goodman v. Staples The Office Superstore, LLC, 644 F.3d 817, 826 (9th Cir. 2011) ("a treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that his opinions were formed during the course of treatment.").

The Court finds, therefore, that Plaintiff's disclosure of Dr. Corry's report is untimely and highly prejudicial to Defendant. The Court finds that Defendant had no notice of Plaintiff's documents or experts, and therefore no subsequent opportunity to offer its own expert testimony, conduct a deposition of Dr. Corry, or otherwise meaningfully rebut Plaintiff's evidence before it filed its motion for summary judgment, or in response to Plaintiff's motion, given that discovery had long since closed. As a result, the Court will not consider Plaintiff's documents attached to his untimely Motion for Summary Judgment. See Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not

---

[1] The Court does not find either Dr. Germin or Dr. Schaner's medical records, also attached to Plaintiff's Motion, to prove causation, as these records are unrelated to Plaintiff's suicidal ideations, depression, or suicide attempt.

- 7 -

1  allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a
2  trial . . .").

3     Even if the Court were to find that expert testimony was not required here, Wilhelm has
4  not provided any other evidence that the Court could construe as creating a genuine issue of
5  material fact as to whether Neurontin specifically caused his injuries.  That is, he has not
6  provided evidence of causation to support his claims. Therefore, Wilhelm cannot establish an
7  essential element of all of his claims, and summary judgment must be granted in Defendants'
8  favor.

9     The Court also finds that Plaintiff is estopped from pursuing this action further, because
10  of his failure to disclose this lawsuit in his bankruptcy proceeding.  "Judicial estoppel is an
11  equitable doctrine that precludes a party from gaining an advantage by asserting one position,
12  and then later seeking an advantage by taking a clearly inconsistent position." Hamilton v. State
13  Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001). Defendant argues that Plaintiff should
14  be judicially estopped from pursuing his claims because Plaintiff failed to disclose the instant
15  suit in his bankruptcy filings. ECF No. 89. The bankruptcy code requires notice of potential
16  claims or current claims or lawsuits. See Hay v. First Interstate Bank, N.A., 978 F.2d 555, 557
17  (9th Cir. 1992)(holding that lawsuit or potential for lawsuit must be disclosed in bankruptcy
18  proceeding); See generally Fed. R. Bankr. P. 1007(b)(1) (debtor must file a schedule of assets
19  and liabilities and a statement of financial affairs); Fed. R. Bankr. P. 1009(a) (schedules may be
20  amended as a matter of course before case is closed); 11 U.S.C. § 1125(b) (1988) (debtor must
21  provide claimants with a disclosure statement containing "adequate information").  Failure to list
22  an asset or interest on the bankruptcy schedules causes the debtor to be judicially estopped from
23  pursuing a claim to recover that interest after discharge.  Hamilton v. State Farm Fire & Casualty
24  Co., 270 F.3d 778, 783, 785 (9th Cir.2001).

25     In this case, it is undisputed that the Plaintiff did not identify this case in his required
26  disclosures and in meetings of creditors in his bankruptcy case.  He concedes that no disclosure
27  was made in his bankruptcy case as required.  He asserts that he spoke with his attorney about
28  this case and the filings but that his bankruptcy attorney at the time told him that it was not

necessary to include this lawsuit or the possibility of such a lawsuit in his bankruptcy disclosures. However, the Court is not aware of an exception to the application of judicial estoppel in this context. Plaintiff was required to disclose this lawsuit in his bankruptcy proceeding. He did not and received the benefit of a discharge which did not include consideration of this lawsuit. Under these facts, the Court finds that Plaintiff is estopped from further pursuing this action.

## VI.   CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment is granted. ECF No. 46.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment is denied. ECF No. 100.

**DATED**: September 19, 2016.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**